Madden, Judge,
dissenting:
These are the essential facts, as I see them, in this case. Calhoun ordered from plaintiff the printing of legal briefs for Calhoun’s use as attorney for Indian tribes which were suing the United States in this court. Calhoun was entitled to receive payment from the.defendant for the amount of the printing cost, as a necessary expense of his representation of the Indian tribes. After the printing was done, he requested of plaintiff receipted bills for the printing in order to present such bills to the defendant as evidence that he was. entitled to reimbursement. This was not an unusual request.. However, since Calhoun was not financially stable, though personally honorable, Calhoun and plaintiff agreed that, inconsideration of Calhoun’s being given these receipted bills,, Calhoun would, in the language of plaintiff’s petition, “collect said funds as the funds of the plaintiff and would deliver- *174 the government’s check therefor, duly endorsed, to the plaintiff upon receipt thereof.” Plaintiff gave Calhoun the receipted bills on July 23,1938. Calhoun presented them, with his claim for reimbursement, to the defendant. Calhoun’s claim was approved by the Indian Bureau and transmitted to the Comptroller General for authorization for payment. On August 2, 1938, Calhoun died, owing the defendant income taxes. The Comptroller General asserted an offset for these taxes against Calhoun’s claim, and it has never been paid. Calhoun’s executors in March 1940 advised the Bureau of Indian Affairs and the Comptroller General that Calhoun’s estate had no interest in the claim, that it belonged to plaintiff, and should be paid to plaintiff.
This recital seems to me to show that on July 23, 1938, Calhoun made an oral assignment or oral declaration of trust of a claim which he had against the defendant, together with an agreement to make a written indorsement of the check which, it was expected, the defendant would issue in payment of Calhoun’s claim, when that check should come into Calhoun’s hands. But this agreement to assign, or declaration of trust preliminary to an assignment, was void under the provisions of United States Code, title 31, sec. 203. That section provided that—
All transfers and assignments of any claim upon the United States * * * shall be absolutely null and void unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuance of a warrant for the payment thereof.
The agreement between Calhoun and plaintiff comes into complete collision with the statute. If it had the legal effect which plaintiff claims for it, of divesting Calhoun of his beneficial ownership of the claim and vesting that ownership in plaintiff, it was a “transfer” or “assignment” within the meaning of the statute. And not only was the required form for the intended transfer completely disregarded, but the subject matter was, at that stage, not assignable at all, regardless of form. The claim had not been allowed, the amount had not been ascertained, and no warrant had been issued.
The opinion of the court speaks of the transaction as a ■“resulting trust,” such as arises when C pays A for property *175 and directs that A shall transfer the property to B and there is no proof that C intended to make a gift of the property to B, or that B should become the beneficial owner and should owe C the price paid by C to A. Ours is not, as I see it, such a situation. C (plaintiff) did not pay or furnish A (the Government) anything. It printed briefs for B (Calhoun), on Calhoun’s credit. Calhoun, upon delivery of the briefs, became the owner of them, and became entitled under the statute to reimbursement for their cost upon the presentation of the proper evidence. There is no assertion in the petition that at this stage of the transaction plaintiff was relying upon anything other than Calhoun’s credit. When, on July 23, plaintiff furnished Calhoun with receipted bills, the evidence required by the statute for Calhoun to receive reimbursement, plaintiff was not furnishing the consideration for the payment which Calhoun was to receive. It was merely supplying Calhoun with evidence necessary to prove his claim. The consideration, the printing of the briefs, had already passed, at a time when, so far as the petition shows, it was intended that Calhoun should own his own claim against the Government, and should owe plaintiff the price of the briefs which plaintiff had printed for him.
But a shorter answer to the resulting trust suggestion is that such a trust is a device invented by the courts to do justice in a situation where evidence is lacking as to what the actual intent of the parties was, and such a trust achieves a result in accordance with what would have been their fair intention if it could have been proved, or with justice, if the parties had no actual intention. Here we have no need to resort to such an invention. Whatever the transaction of the parties was, it was an express one. The petition states just what the parties intended. If the transaction intended is properly defined as a trust, it is an express trust, not a resulting one, and must stand or fall as an express trust.
The concurring opinion is based upon the idea that, looking through the form to the substance of the transaction, the United States was indebted to plaintiff, the printer, for briefs printed for the Indians whose money the United States held. This view places Calhoun, the attorney for the Indians, in the position of an agent for the United .States, authorized to incur a printing bill on its behalf, *176 which it was bound to pay. If this was the real nature of the arrangement, it would follow that plaintiff should recover, since the United States would have no right to set off Calhoun’s debt to it against its debt to plaintiff.
I think that this was not the substance of the arrangement. If A agrees with B that he will reimburse B for an expenditure which B may make for a specified purpose, that does not give B an authority to subject A to a debt to C for that purpose. While in most cases it would not be any more burdensome to A to pay C than to reimburse B who has paid him, still that is not what A agreed to do. See 2 Williston on Contracts, sec. 402, p. 1157; Burton v. Larkin, 36 Kan. 246, 13 P. 398, 59 Am. Rep. 541. So C has rights only against B and will get no rights against A except by assignment, or some such proceeding as garnishment. Whatever rights C obtains against A in one of these ways will be subject to offsets and other defenses which any debtor has against his creditor. Grand Prairie Gravel Co. v. Trinity Portland Cement Co., (C. C. A. 5) 295 Fed. 140.
The statutes here involved did not, I think, intend fi> subject the United States to claims by printers, stenographers, hotel keepers, and others who might furnish goods or services to an attorney for the Indians.
There is one problem with reference to the propriety of the offset that might be noticed, although the parties have not mentioned it in briefs or argument. The statutes provided for the payment to Calhoun from the tribal funds-belonging to the Indians, but held by the United States. Thus the debt from the United States to Calhoun was owed, by it as trustee for the Indians, while Calhoun owed hi& debt for taxes to the United States as complete and beneficial owner. The right of the United States to set off the-one debt against the other is doubtful. If the United States did not have the right of offset which it asserted, plaintiff was not prejudiced, however, except to whatever extent his position as a creditor of Calhoun might have been improved by the payment of this claim into Calhoun’s estate. The-priority of the tax claim and other priorities would, in all probability, have prevented plaintiff from receiving any benefit from the payment of the claim to the estate.
I would sustain the demurrer.
*177 On June 1,1942, the court filed the following order in the above case (No. 45426):
ORDER
This case comes before the court on plaintiff’s motion for judgment; and it appearing that on April 6,1942, the court, by opinion, overruled the defendant’s demurrer, and stated that “unless the defendant should within ten days advise the court of its desire to offer some evidence, the defendant will be considered to have elected to stand on its demurrer and judgment will be rendered for the plaintiff in the amount claimed in the petition”; and it further appearing that the defendant has not advised the court of its desire so to take evidence, and has filed no objection under the Eules to the allowance of plaintiff’s motion for judgment, now, therefore,
It is ordered, this 1st day of June, 1942, that plaintiff’s motion for judgment be and the same is allowed as to the entry of judgment and overruled with respect to the allowance of interest, and judgment is now entered for plaintiff in the amount claimed in the petition, to-wit, two hundred thirty-one dollars and seventy-five cents ($231.75).